## MILLER v. MURRAY.

### SAME v. DONOVAN et al.

#### (Circuit Court, S. D. New York. June 1, 1894.)

#### Nos. 5,380 and 5,381.

1. PATENTS—LIMITATION OF CLAIM—PRIOR STATE OF ART—ROAD CARTS.
    In the Miller patent, No. 371,090, for an improvement in road carts, claims 1, 2, and 5, for combinations which include longitudinal springs, each consisting of a long and short branch, supporting the shafts, must be restricted, in view of the prior state of the art, to the particular form of such spring described, and therefore are not infringed by a road cart not having such two-part spring.

2. SAME.
    In the Miller patent, No. 459,098, for an improvement in road carts, claims 1 and 2, for combinations which include springs supporting the shafts, the forward ends bolted to the shafts, and the rear ends running loosely through eyes bolted to the shafts, and having cushions surrounding the ends of the springs, to prevent rattling and take up the jar, as such

devices are old, must be restricted, as to such shaft supports, to the precise combination, and are not infringed by a structure in which the ends of such springs are inserted into boxes secured to the rear ends of the shafts, and packed with rubber, which permits a slight vibration, but not the free play and longitudinal movement characteristic of the patented device.

8. SAME—ANTICIPATION.

Claims 7, 8, 9, and 10 of said patent, for combinations of the shafts, the hangers suspended from them, the side bars, and the foot rest shown, cannot be sustained in view of previous patents and devices, the differences being trivial and showing no patentable invention.

These were two suits by Henry J. Miller, one against George W. Murray, the other against J. Donovan and another defendant, for infringement of patents.

Knight Bros., for complainant.

Henry Bacon, for defendants.

LACOMBE, Circuit Judge. These are applications at final hearing upon pleadings and proofs for the usual decree of injunction and accounting, in two suits in equity, brought for alleged infringement of letters patent No. 371,090 (October 4, 1887) and No. 459,098 (September 9, 1891), both issued to Henry J. Miller, the complainant, for improvements in road-carts.

### Patent No. 371,090.

The claims alleged to be infringed are:

"(1) In a road cart or other vehicle, the combination of the transverse spring attached at its ends to the shafts, and supporting a centrally located seat, the said shafts resting upon other springs, as shown and described.

"(2) In a road cart or other two-wheeled vehicle, the springs for supporting the shafts, constructed and arranged substantially as shown and described, in combination with said shafts, the transversely arranged spring extending between and attached to them, the centrally located seat upon said spring, and the downwardly and forwardly extending braces and supporters connected directly to the seat and pivotally to the shafts, all arranged substantially as and for the purposes set forth."

"(5) In a road cart or other two-wheeled vehicle, the combination of the rearwardly and downwardly extended shafts connected rigidly together at their rear ends by means of the crossbar, as shown; said shafts being supported by springs located parallel therewith, both springs consisting of a long and short branch, and each branch being attached separately to the aforesaid shafts, as and for the purposes set forth."

The object of the invention is to reduce as much as possible the effect of horse motion and of any jar or shock occasioned by the vehicle coming in contact with any stone or other unevenness upon the road. The parts of the combination are all old. The "springs located parallel with the shafts," and which support the shafts above the axle, are thus described in the specification:

"Upon suitable bearings, C, on the axle are arranged and attached the lower branches of my springs, D. The fore ends of these springs, D, are attached to the shafts, E, at points, F, several inches forward of the axle."

The drawing and context show that by the words "springs, D," the inventor meant to indicate the lower branches of his springs, which springs he elsewhere refers to as "being each composed of two

branches having a relative longitudinal movement." The specification continues:

"The upper branches, G, of these springs, are connected to the lower branches at the rear [extending, as the drawing shows, rearwardly beyond the vehicle], and are so arranged as to have a relatively sliding movement longitudinally between the upper and lower branches of the springs. * * * In the drawings I have shown the upper branches of the springs as provided with ears, G, which fit over the rear ends of the lower branches, and with pins, H, which extend through said ears and the longitudinal slots or openings arranged in the lower branches of the springs. The longitudinal movement, however, may be secured in other ways, and I do not limit myself to the exact means shown. The upper branches of these springs are attached to the shafts at points K [which in the drawing are shown to be just forward of the axle]."

*Fig. I.*

*Fig 4*

An examination of the various patents put in evidence to show the prior art discloses the fact that it was old to support the shafts above the axle by springs extending longitudinally beneath them, and that such a device was used in combination with a transverse spring supporting the seat. Reference to the patents of Bach, No. 288,757 (November 20, 1883), Bach. No. 299,319 (May 27, 1884), Barber, No. 316,934 (May 5, 1885), Barber & Croft, No. 342,993 (June 1, 1886), not to mention others, shows that the field of invention was much restricted when the complainant entered it, and that the combinations claimed by him can be sustained only when the patent is construed so as to confine them to the particular form of longitudinal spring which he has described, and which in the precise form shown in his specification and drawings seems not to have been used in road wagons. As the defendants use no such two-part spring, the bill as to this patent is dismissed.

### Patent No. 459,098.

In this patent the complainant modified the structure of his longitudinal springs. His specification says:

"As customary in such carts, the seat is supported from the axle through the medium of the shafts and suitable springs. * * * The connection of the shafts to the axle is clearly shown in Figs. IV., V., and VI. 5, 5, are heavy plate springs, bolted or otherwise clamped at their forward ends to the shafts. Their rear ends run loosely through eyes, 6, 6, bolted to the shafts. A cushion, 7, preferably of soft rubber, surrounding the end of spring 5 in each eye, and having the greater portion of its body above said springs, pre-

vents rattling, and also takes up the jar. The springs 5, 5, are clamped to the axle."

FIG.II.

FIG.IV

FIG.VI.          FIG.V

The claims of the patent which include this device, and which are alleged to be infringed, are:

"(1) In a light sulky or road cart, the combination of the axle, the shaft extending over and to the rear thereof, the bent plate or bar springs bolted at their forward ends directly and rigidly to the shafts forward of the axle, thence bent down slightly, and resting on the axle, thence passing to the rear thereof, and the sockets or eyes fixed to the shafts' rear ends having a gum or rubber cushion within it with a hole to receive cushion and permit longitudinal motion of said springs, substantially as set forth. [To make sense out of the last clause of this claim, it is necessary to insert a comma between the words "receive" and "cushion."]

"(2) In a road or other cart, the combination of the shafts, the axle, the spring fixed at one end of the shafts, and at an intermediate point to the axle, eyes fixed to the shafts and adapted to receive the other ends of said springs, and resilient cushions in said eyes surrounding the ends of said springs, the greater portion of the body of said resilient cushions being above the springs, substantially as herein set forth."

It was old in the art to give play to a spring by running one or both of its ends through an eye or slot, with rubber packing, washers, or cushions in the eye, to obviate rattling or noise and prevent too free play of the ends of the spring. Such a device is found applied to a spring supporting a wagon seat in the patent to Naramore, No. 174,288, February 29, 1876.

The defendants' structure has plates or bars, bolted to the shafts forward of the axle, bending downward to the axle, where they are clamped, and thence bending upward, with their ends inserted into boxes which are secured to the rear ends of the shafts. The interior of each box is packed with rubber, which acts as a cushion for the plate or bar. The bar impinges rearwardly upon this rubber cushion, which permits a slight vibration, sufficient to prevent granulation or fracture consequent upon shock, but does not admit that free play through the box and consequent longitudinal movement which is the characteristic of the complainant's device. The differences between defendants' and complainant's shaft supports are slight, it is true; but the field of invention was a very narrow one, and complainant's claim can be sustained only under a construction which will restrict it closely to the precise combination of his patent.

The same patent contains four other claims which are alleged to be infringed:

"(7) The combination of the shafts, the hangers suspended from the shafts. consisting of a housing, a supporting pin, and a cushion on said pin, and the side bars hung at their forward ends on the cushion of said hangers, substantially as set forth."

This claim cannot be sustained in view of the patent to Sargent, No. 273,610, March 6, 1883, which shows shafts, hangers, housings, supporting pins, cushions, and side bars hung at their forward ends on the cushions of the hangers. The difference in the shape and location of the side bars is trivial, and the suggestion of complainant's expert that the Sargent patent does not anticipate because the vehicle therein described is "not a road cart, but more properly a gig, with the body mounted on the axle through the medium of an elliptic spring, and the shafts likewise coupled to the axle," is frivolous.

"(8) The hanger having housing, pivot pins, cylindrical cushion, and side washers, in combination with the side bar having a strap at its forward end adapted to surround said cushion, substantially as set forth."

This is simply the combination of the seventh claim, with the addition of what the patentee calls "wear plates or washers, preferably of leather or rubber." The use of such washers to relieve friction, prevent rattling, secure even pressure, and avoid wear and tear between wood or metal surfaces, has been the common property, not only of mechanics, but also of persons possessing ordinary intelligence for many generations. It might reasonably be supposed that, by this time, patentees, their experts and their counsel, would appreciate the fact that it is a waste of time to claim that the insertion of such a washer, for such a purpose, in an old combination, is evidence of even the feeblest glimmer of inventive genius.

"(9) The two-part hanger having two housings with pivot, cylindrical cushions, and side washers, in combination with the side bars and foot-rest supports, and adapted to hang from the two parts of the housing, substantially as set forth."

The patent to Vorwick, No. 411,114, September 17, 1889, shows that it was old to make the foot rest of a road cart independent of the side bars of the seat, and to hang its forward supports from the forward cross bar (the splinter bar) of the shafts, so as to admit of freedom of movement at the point of attachment. Vorwick's support simply hooked into an eye. Complainant has substituted the housing pin and cushion which Sargent had already used for hanging the side bars, adding the side washers, and affixed side-bar supports and foot-rest supports side by side, to the splinter bar, so that the same supporting pin will run through both housings. Such a device is plainly within the skill of the ordinary mechanic, and in the patent to McGrath, No. 392,622, November 13, 1888, side and foot rests are both hung from the same pin.

"(10) The combination of the side bars having the hooks, cushions on said hooks, the shafts having the hangers, cushions on said hangers, and the foot rest, whose supporting bars have eyes at one end and hooks at the other end adapted to engage said hooks and hangers, as and for the purpose set forth."

Reference to the patents already cited above, especially Vorwick's, sufficiently discloses a lack of patentable invention in the combination covered by this claim.

The bills are dismissed, with costs.